# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

American Casualty Insurance and Security Company, of Baltimore City, now to the use of the Mercantile Trust and Deposit Co., of Baltimore, and D. K. Este Fisher, Receiver and Assignee for benefit of Creditors of said American Casualty Insurance and Security Company of Baltimore City, v. James W. Arrott, Appellant.

*Insurance—Agent—Cancelation of policy by agent after notice of receivership.*

Where an agent of an insurance company has notice that the company is going out of business because of insolvency, and that its affairs will be placed in the hands of a receiver, he cannot use moneys of the company in his hands to cancel policies, the holders of which have not given the notice in writing required by the policies; and if he so use the money of the company, he will be liable to account for it to the receivers subsequently appointed.

Argued Nov. 11, 1896. Appeal, No. 135, Oct. T., 1896, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1895, No. 657, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover moneys received for premiums on insurance. Before McCLUNG, J.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

This case has resolved itself practically into a question of law. It seems that the legal plaintiff, the casualty company, or rather the company whose receiver is plaintiff, had employed the defendant as agent, and that he was its agent at the time of its failure in 1893; that on the 23d of November of that year a receiver was appointed for that company, and this suit grows out of a dispute arising about the settlement of the accounts of Mr. Arrott, the agent, with that receiver. Mr. Arrott rendered an account showing that he had received certain moneys and made certain disbursements. His account showed a balance due to him of some $290, or perhaps of $289; it would appear that since, it has been increased in some way by some items, a few dollars over $290, perhaps $297, that is, admitting that he was entitled to all the credits the account showed, there would be a balance due him of $289 or $297, as the case may be. The receiver, however, disputes the credits that he claims to the extent of $2,126.10. That would wipe out his claim of a balance, and leave a balance coming to the receiver of $1,837.03. The disputed credits which Mr. Arrott claims, are, first, the return premiums paid on some twenty-five policies, amounting to $1,562.42, and certain expenses, salary of inspectors, and rents, amounting to $563.68. As to this second item of $563.68, if you believe the uncontradicted testimony of the witnesses, Mr. Arrott is entitled to that credit, and I will assume that that is allowed, and the claim of the plaintiff is reduced that amount. There is practically no controversy about that.

That leaves for consideration only the question as to whether the defendant is entitled to credit for these return premiums. [Undoubtedly, when this receiver was appointed, and it is proper to say that that appointment of receiver was followed up by a deed of assignment, dated, I believe, November 27, undoubtedly upon the appointment of the receiver, the legal title to this money in Mr. Arrott's hands pass to that receiver, and he would have no right to pay it out, and to charge the

company with it, unless he showed equitable considerations, which do not appear in this case. The burden would be upon him to show that it would be inequitable to charge him with that amount of money. There has been nothing shown here which would justify the court in holding that he has successfully assumed that burden. It is admitted that a telegram putting him upon his guard was received upon the morning of November 23, 1893; that is, it is practically admitted that that was received at his office, though he says that he did not personally receive it nor know of it. Under those circumstances, there is nothing in the case which would justify the court in allowing a finding that he had acted under such circumstances as would entitle him to claim this money against the receiver. It would be practically preferring these parties; it would be practically paying out the money which was in his hands and which would be distributable by the receiver amongst all the creditors, to parties who were not then strictly creditors but who, by his act, perhaps proper enough in itself, would become creditors of the concern. It was doubtless natural enough that he should desire to pay it to these parties who had taken out policies through him, but as a matter of law, he did not have the right to prefer them in that way. They could surrender their policies and claim a pro rata share against the insolvent corporation, but it would not do, under the circumstances, to permit an agent to act in this way and prefer creditors in whom he was interested.

The result of this is, that if you find, as is practically conceded, and as you should find, that he is entitled to this credit of $563.68, then your verdict should be for the $1,562.42 less $297.81, which would be $1,264.61, as I calculate it. Counsel for the plaintiff has a calculation, which a hasty glance indicates, is practically the same—in fact, it is exactly the same as that which I have arrived at in a slightly different way. The company, of course, would be entitled to interest from the time at which it should have been paid, up until the time of the rendition of your verdict.] [2]

Verdict and judgment for plaintiff for $1,447.97. Defendant appealed.

*Error assigned* among others was (2) above instruction, quoting it.

*W. B. Rodgers,* for appellant.

*Wm. M. Hall, Jr.,* for appellee.

OPINION BY MR. JUSTICE FELL, January 4, 1897:

This action is brought by the receivers of the American Casualty Insurance and Security Company to recover from the defendant the amount of the premiums collected by him from policy holders while he was acting as agent of the company. In the settlement of his accounts with the company the defendant claimed credit for return premiums paid by him on the cancelation of policies. The question in the case is whether these payments were properly made. The defendant was authorized to accept the surrender of policies and to return the unearned premiums to policy holders when demand was made upon him in the ordinary course of business. It was alleged however that he surrendered the policies in question after the termination of his agency, and with knowledge that an application had been made for the appointment of receivers, for the purpose of securing those who had procured policies through him and of protecting his own interests.

The receivers were appointed November 23, 1893. On the evening of the 22d, the general agent of the company, with whom the defendant's contract was made, telegraphed him to write no more policies for the company, and that a receiver would be applied for the next morning. The telegram was delivered at the defendant's office early on the morning of the 23d. Within the next five days the policies issued through him were canceled and the return premiums paid to the insured or used by the defendant to procure for them new policies in other companies which he represented. Many of these policies, if not all of them, were sent for by the defendant, and the holders of nearly two thirds of them were not entitled to surrender without having given ten days' notice in writing. The fair inference from the testimony is that the cancelation was at the instance of the defendant, and that he hastened to complete it before he should receive official notice of the actual appointment of the receivers. The effect of the cancelation and repayment by him was to prefer the policy holders in whom he was

interested at the expense of the other policy holders and the general creditors of the insolvent company.

There can be no legal justification of the defendant's conduct, though it may be free from the taint of moral wrong. He represented the company and held its money received by him as agent. The money belonged to the company, and he could part with it only in the regular course of the business which had been intrusted to him and when acting within the scope of his agency. He had no power at any time to cancel policies unless the holders could demand cancelation under the terms of their agreement with the company; and when he received notice that the company was going out of business because of insolvency and that its affairs would be placed in the hands of receivers, his agency, if not terminated for all purposes, was at least limited to the cancelation of policies which the holders were entitled to have canceled when regularly presented. He was still held to the letter of his authority and to represent his principal, and not those having adverse interests. The burden of showing that he was justified in making the payments for which credit is asked was with him, and having failed in this, a verdict was properly directed against him.

The judgment is affirmed.