ALFRED J. BOHLINGER, SUPERINTENDENT OF INSUR-
ANCE OF THE STATE OF NEW YORK, ETC., PLAIN-
TIFF-RESPONDENT, v. WARD & COMPANY, A NEW
JERSEY CORPORATION, DEFENDANT-APPELLANT.

Argued December 12, 1955—Decided January 9, 1956.

*Mr. Harold D. Feuerstein* argued the cause for appellant.

*Mr. Irvin Waldman,* of the New York Bar, argued the cause for respondent (*Messrs. Bilder, Bilder & Kaufman,* attorneys; *Mr. Waldman* on the brief).

The opinion of the court was delivered by
WILLIAM J. BRENNAN, JR., J. Plaintiff, statutory liquidator of Preferred Accident Insurance Company of New York, seeks a judgment requiring defendant, Ward & Company, to account for and pay over premiums of $6,112.97 in the latter's hands on April 30, 1951 when the order of liquidation was entered in the Supreme Court of New York. Under a written agency agreement, dated July 1, 1949, the defendant was named the insurance company's agent "to receive and accept proposals for * * * contracts of insurance," and to "collect, receive and receipt for premiums" thereon, and "to retain out of premiums collected" commissions at rates specified in the agency agreement.

Defendant admits it holds collected premiums in such amount but asserts it is entitled to credits of $4,405.34 against them. The claimed credits are the aggregate net unearned premiums on 150 to 160 policies gathered in by the defendant during a ten-day period before the entry of the order of liquidation and, with a few exceptions, returned by defendant to the insurance company's Newark office on April 28, 1951, two days prior to the entry of the liquidation order.

The Chancery Division, after trial, allowed the credits to the extent of $4,054.60, the aggregate of the net unearned premiums on the policies returned on April 28, but disallowed them to the extent of $350.74, the net unearned premiums on the few policies not turned in until after April 30. Defendant replaced the policies at its own expense with policies in another company.

On appeal, the Appellate Division adjudged that defendant held the $6,112.97 of premiums as a fiduciary and was obliged to account for them in full without allowance for credit in any amount. The judgment of the Chancery Division was accordingly reversed with direction for further proceedings in conformity with the opinion. 34 *N. J. Super.* 593 (1955). We allowed certification on defendant's petition. 19 *N. J.* 329 (1955).

Defendant acknowledges that the agency agreement in terms contemplated that premiums collected by it were to be held in a fiduciary capacity for turn over in full to its principal, except for deduction of commissions. It accordingly concedes that if its relations with the insurance company are governed by the agency agreement as written, the Appellate Division rightly held that no credits could be taken, admitting the controlling force in that regard of the decision in *Bohlinger v. Mayville Realty Co.*, 135 *N. Y. S.* 2d 865 (*Sup. Ct.* 1954), affirmed 285 *App. Div.* 1045; 141 *N. Y. S.* 2d 509 (*App. Div.* 1955), appeal denied 309 *N. Y.* ——, 129 *N. E.* 2d 790 (*Ct. App.* 1955), where plaintiff prevailed against another agent of Preferred in an action similar to the instant one. But defendant insists that here the proofs at the trial as to "the subsequent course of busi-

ness" between the parties after the agency agreement was made showed that the agreement was replaced by a new, separate and distinct arrangement, see *Van Dusen Aircraft Supplies, Inc. v. Terminal Construction Corporation*, 3 *N. J.* 321, 326 (1949), either (1) the substitution of the relation of creditor and debtor for that of principal and agent, or (2) at the least, a modification of defendant's obligation as agent to remit collected premiums to authorize it to offset net return premiums upon canceled policies against collected premiums, so that when net return premiums of $4,405.34 became due upon the surrender of the 150 to 160 policies for cancellation, defendant was rightly entitled to take credit in that amount against the $6,112.97 of collected premiums in hand.

Viewing the proofs most favorably to the defendant, we find no support for a finding of a new arrangement justifying the claimed credit. As to the contention that the substitution of a creditor-debtor for the principal-agent relation was established, we agree with the concurring conclusions of the trial judge and the Appellate Division that it is without substance. It is true that at no time was there literal compliance with the provision of the agency agreement that *"For the convenience of the Agent* the Company will send *monthly* to the Agent a record of the business *of the month* placed by the Agent with the Company, the premiums on which, if collected by the Agent, *shall be paid to the Company promptly thereafter."* Instead, the Company, while it sent a record monthly, did not list a policy for remittance by defendant of the premium thereon until after 90 days had elapsed from the date of its writing. And even then, compliance with the agent's obligation for "prompt payment" of the full premium collected less commissions only was not insisted upon; defendant was suffered to note on the record when returned to the company with a remittance that payment of premiums as to specified policies would be deferred until a later date; or, if a policy had meanwhile been cancelled, to remit on that policy on a net earned

premium basis even though defendant may have collected the full premium from the policyholder (and in such case the company did not concern itself whether defendant returned the unearned premiums to the insured); or, if the policy on the list was cancelled within 60 days of its inception date, defendant might refuse to pay any part of the premium; or, and especially emphasized by the defendant, the net aggregate remittance due as to the listed policies after such adjustments could be further reduced by the amount of unearned premiums due on cancelled policies the full premiums on which had been previously remitted by the defendant to the company. Moreover, the company knew that defendant extended credit to some of its customers and on occasion paid premiums to the company before collecting them from the policyholders. The company also knew that defendant was agent for other insurance companies and commingled all premiums collected in one bank account.

We fail to see how these departures from the letter of the procedure for settling accounts and handling premiums contemplated by the agreement operated to destroy the basic relation of principal and agent established by the agreement. The more logical inference is that, at best, the departures evidence a greater solicitude "For the convenience of the Agent," although doubtless better serving the convenience of the company as well. Moreover, we deem it significant that the defendant has not taken issue in this court with the observation of the Appellate Division that "The reported cases disclose that a like course of accounting procedure is not uncommon in the insurance business." Certainly in the entire setting, taking into account the agency agreement and the seeming consistency of the practices with the customs and usages of the insurance industry, the situation is not at all comparable to that in *State v. Western Union Telegraph Company*, 17 *N. J.* 149 (1954), upon which defendant chiefly relies, for this is not a case, paraphrasing the test of that decision, "when the court is able to say that the parties intended [the agent] to have the unrestricted use of the

[premium] in the carrying on of its ordinary business and to be liable only to pay a similar amount to the [company]."

 We likewise see no merit in defendant's argument that in any event the credit sought here in nowise differs from the credits which defendant was permitted to deduct from monthly remittances for unearned premiums on policies cancelled in the ordinary course of business after defendant had passed on the full net premiums to the company. On the face of it there is a vast difference between an unearned premium credit on a policy cancelled at the request of the policy holder or the company in the ordinary routine of the operation of the agency and the credits claimed here arising from a wholesale operation requested neither by the company nor the policy holders but embarked upon by the defendant in its own self-interest to preserve the good will of the customers. And that difference of itself exposes the fallacy of defendant's position that the authority to do the one is also cover for the doing of the other. We subscribe fully to, and adopt, what Judge Jayne said in that regard at 34 *N. J. Super.*, pages 589 to 593 of his opinion for the Appellate Division. We add, for emphasis, that the policy holders did not turn over their policies to the defendant with cancellation primarily in view. Defendant informed them that the policies would be returned if Preferred weathered the storm, and would be replaced with policies of another company only if Preferred failed. It was not until the night of April 27 (the New York Supreme Court announced its finding of Preferred's insolvency earlier that day) that defendant closed the transaction with another insurance company to replace the policies. For the most part, the full premiums on the policies had already been remitted by defendant to Preferred; of the $4,405.34 credit claimed $3,385.33 was the net unearned premiums on policies as to which the full premiums were so paid. The insurance company now being insolvent, allowance of the claimed credit would in actuality sanction a preference at the expense of other policyholders and creditors—and indeed what defendant did was done for the precise purpose of making its customers whole. It neither

appears nor is it argued that defendant's conduct was infected with the taint of moral fraud, but plainly what was attempted here cannot be brought within the authority of a practice developed to facilitate the settling of accounts in the routine of the operation of a going business. See *American Casualty Insurance & Security Co. v. Arrott*, 180 *Pa.* 1, 36 *A.* 319 (*Sup. Ct.* 1897). The claims of the 150 to 160 policyholders for unearned premiums must stand with like claims of other policyholders similarly situated. Policyholders who had not paid the unearned premiums on policies cancelled by the insolvency cannot, as the statutory liquidator admits, be held liable therefor. But such premiums already in the hands of the company or its agent, as here, form part of the insolvent estate and are recoverable by the policyholders only to the extent they may be under the law governing the administration of the estate.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.