**Alfred J. BOHLINGER, Superintendent of Insurance of the State of New York, as Liquidator of the Preferred Accident Insurance Company of New York**

v.

**Samuel C. KAGAN, d/b/a Kagan & Shawcross.**

**Civ. A. 1653.**

United States District Court
D. of Rhode Island.

Dec. 31, 1956.

Francis V. Reynolds, Providence, R. I., Irvin Waldman, New York City, for plaintiff.

John P. Cooney, Jr., Providence, R. I., for defendant.

DAY, District Judge.

In this action the plaintiff, statutory liquidator of The Preferred Accident Insurance Company of New York, seeks a judgment requiring the defendant to account for and pay over to him all monies collected by the defendant as premiums for all policies or other contracts of insurance issued by or in behalf of The Preferred Accident Insurance Company of New York by or through the defendant, his agents, sub-agents, servants and employees together with interest thereon from the date due. Jurisdiction of this Court is based upon diversity of citizenship and the existence of a controversy in the required amount.

The complaint alleges in substance that the charter of The Preferred Accident Insurance Company of New York (hereinafter called "Preferred") was forfeited, surrendered and annulled by order of the Supreme Court of the State of New York entered on the 30th day of April 1951; that on said date plaintiff was directed by said Court to take possession of the property of and to liquidate the business and affairs of Preferred; that Preferred contracted with defendant to act as agent for the writing and issuing of policies of insurance for Preferred in and about Rhode Island; that although defendant agreed to remit all premiums collected by him, his agents or sub-agents on policies of Preferred, he has refused and failed to transmit various sums collected on policies and contracts which he issued for Preferred in and about Rhode Island, and that said monies in payment of premiums were received by the defendant in his fiduciary capacity as agent for Preferred.

In his answer the defendant admits that Preferred was dissolved and that the plaintiff was appointed Liquidator on April 30, 1951, and that he acted as agent for Preferred in writing policies of insurance and that he did issue such policies for it in Rhode Island. He denies therein that he agreed to remit all premiums collected by him to Preferred and that he refused to and failed to transmit the same and avers that he remitted all monies due to Preferred prior to its dissolution in accordance with his contract with it. He also avers therein that by agreement with Preferred he sent to it each month an account of all policies written by him, the gross premiums charged therefor and commissions allowable to him with a list of cancellations and return premiums thereon and in such cases the excess, if any, of commissions originally reserved to him over the actual commission on the earned premiums charged was credited to Preferred, that a net balance was arrived at in each of said monthly accounts which was paid by him to the Preferred within one hundred twenty (120) days after the submission of such report. He further avers in his answer that he was charged and held obligated by Preferred to pay all said premiums due regardless of whether or not said premiums were collected by him. In his answer he also avers that Preferred and subsequently the plaintiff received such accounts and

has all of the available records to determine an accounting between the parties but that the plaintiff has refused to recognize the agreement existing between him and Preferred and to accept an accounting in accordance with said agreement. He asserts that plaintiff is not entitled to the gross premiums collected by him and that he is chargeable only for the earned premiums up to the date of dissolution of Preferred, to-wit, April 30, 1951, less his commissions on the earned premiums, and further, that in accordance with his agreement with Preferred he is entitled to a credit for the unearned premiums on policies already paid for less credit for the excess of his commissions originally reserved over the actual commission due on the earned premium charged. He also contends that under his agreement with Preferred a debtor-creditor relationship was established and that in fact there is due and owing from Preferred to him the sum of Eleven Hundred Seventy-six and 48/100 ($1,176.48) Dollars for which he prays judgment.

At the commencement of the trial the parties stipulated that Leffert Holz, the present Superintendent of Insurance of the State of New York, should be substituted as the plaintiff herein. The evidence adduced established that on December 16, 1949, Preferred and the defendant after certain preliminary discussions entered into a written agreement, entitled "Agency Agreement" under which Preferred granted authority to the defendant, designated therein as "Agent", to receive and accept proposals for such contracts of insurance covering risks located in Providence and vicinity as Preferred had authority to make. The provisions of this agreement which I deem to be pertinent to this controversy are the following:

"(1) Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company and to retain out of premiums collected, as full compensation on business so placed with the Company, commissions at the following rates, viz: * * *. It is a condition of this Agreement that the Agent shall refund ratably to the Company, on business heretofore or hereafter written, commissions on cancelled ·liability and on reductions in premiums at the same rate at which such commissions were originally retained.

"(2) For the convenience of the Agent the Company will send monthly to the Agent a record of the business of the month placed by the Agent with the Company, the premiums on which, if collected by the Agent, shall be paid to the Company promptly thereafter.

"(7) This Agreement supersedes all previous agreements, whether oral or written, between the Company and the Agent and may be terminated by either party at any time upon written notice to the other."

 There was testimony by the defendant to the effect that this written agreement did not embrace all the pertinent oral negotiations of the parties and that he had an oral understanding with a representative of the Company prior to the execution of the agreement which differed from that expressed in the agreement and which he contends created the relation of creditor and debtor between the Company and him. I do not think it necessary for me to discuss this contention at any length. The written agreement between the Company and the defendant purports to contain the whole agreement of the parties thereto. In the absence of fraud or mistake, neither of which is claimed or shown here, parol or extrinsic evidence is not admissible to alter or contradict the terms of such a written agreement. Supreme Woodworking Co., Inc., v. Zuckerberg, R.I. 1954, 107 A.2d 287. A complete written

agreement merges and integrates all the pertinent oral negotiations occurring at the time of or prior to its execution and ordinarily may not be varied or contradicted by parol evidence. Supreme Woodworking Co., Inc., v. Zuckerberg, supra; Quinn v. Bernat, 80 R.I. 375, 97 A.2d 273. No circumstances were shown here to bring this case within any exception to this well settled rule.

■ Defendant also urges that the Company by an authorized agent subsequent to the execution of the written agreement agreed to a modification thereof whereby its relation to him became that of creditor and debtor. While it is true that parties to an existing contract may by mutual consent modify or change it by altering or excising certain of its provisions or by adding new provisions and that this may be done orally even though the original contract be in writing if based on proper consideration, the evidence in this case in my opinion falls far short of establishing any such mutual consent by the parties based on proper consideration to modify their existing written contract as claimed by the defendant.

■ In addition, the defendant contends that in any event the "subsequent course of business" between the parties (after the execution of the written agency agreement) establishes that it was replaced by a new, distinct and separate arrangement under which the relation of creditor and debtor between the company and him was substituted for that of principal and agent created by their written agreement.

It is true that at no time was there literal compliance with paragraph "2" of the agency agreement which provided that "For the convenience of the Agent the Company will send monthly to the Agent a record of the business of the month placed by the Agent with the Company, the premiums on which, if collected by the Agent, shall be paid to the Company promptly thereafter." The company sent no monthly statements to the defendant. Instead the defendant sent to the company monthly reports of the business placed by him during the preceding month. These reports were on what is commonly known in the insurance business as an accounts current basis. In these reports the defendant listed the policies written in the particular month covered by the report, their expiration dates, the names of the policyholders, the premium charges, and the amount of premiums returned by him to the policyholders in cases where policies written and reported in previous monthly reports had been cancelled during the month for which the report was being filed. In these reports he credited himself with commissions on policies placed at the rates prescribed in the agency agreement, credited the company with a pro-rata share of commissions previously charged by him on any policies cancelled during the month and charged himself with the difference between the premiums charged on the policies written during the month covered by the report and the net commissions payable to him. In addition, however, the amount so stated to be due by him to the Company was not paid by him upon the filing of this monthly report. The fact is that the Company permitted him to pay this amount at any time thereafter within ninety (90) or even one hundred twenty (120) days.

From the foregoing it is clear that neither the Company nor the defendant complied with the provisions of said paragraph "2". However, it is clear that neither the Company nor the defendant regarded the defendant as liable for any premium which he did not collect. He was not responsible for any premium unless it was received by him.

I fail to see where the departures from the contractual procedure for settling accounts and handling premium payments operated to destroy the basic relation of principal and agent established by the agreement of the parties. In Bohlinger v. Ward & Company, 1956, 20 N.J. 331, 120 A.2d 1, where a similar contention was made by the defendant and wherein

the facts were strikingly similar to those presented here, the Court said 120 A.2d at page 3:

" * * * We fail to see how these departures from the letter of the procedure for settling accounts and handling premiums contemplated by the agreement operated to destroy the basic relation of principal and agent established by the agreement. The more logical inference is that, at best, the departures evidence a greater solicitude 'For the convenience of the Agent,' although doubtless better serving the convenience of the company as well."

As agent of the Company it was the duty of the defendant to account for all funds that came into his hands for the use of his principal. Robertson v. Malone, 5 Cir., 190 F.2d 756; In re Mason Co., D.C.Conn., 254 F. 164, 170; Bohlinger v. Ward & Company, supra. This was the extent of his liability under the agency agreement.

Defendant relies upon the case of Rhode Island Mutual Liability Ins. Co. v. Pierce, R.I. 1934, 171 A. 243, as authority for his contention that his relation with the Company was that of debtor and creditor. In my opinion that case is clearly distinguishable from the instant case. It was an action for trover wherein the plaintiff sought to recover the balance of certain premiums on policies collected by defendant who had failed to pay them to the plaintiff. The Superior Court non-suited the plaintiff. This ruling was sustained by the Supreme Court on the ground that the plaintiff had failed to prove that the defendant was under any obligation to deliver to the plaintiff the *specific* monies which he collected as premiums.

The opinion of the Supreme Court discloses that the defendant under his contract with the plaintiff was responsible for the premiums on policies placed by him whether they were paid for or not, and points out that there was nothing in their contract nor in the course of business between the parties to sustain the contention that the defendant was obligated to turn over the specific funds received for the premiums. In the present case it may be observed that neither in the contract between the Company and the defendant nor in the course of their business dealings is there anything to sustain the contention that he was responsible for premiums if he did not collect them. In fact, the evidence clearly establishes that he was not responsible for the premiums unless he actually collected them.

In my opinion the relation existing between the Company and defendant was that of principal and agent throughout the course of their dealings. As agent it is his duty to account for all premiums collected by him. The plaintiff as successor to the Company is entitled to this accounting and the defendant shall be required to disclose and account for all premiums actually collected by him on policies or other contracts of insurance of Preferred Accident Insurance Company and not remitted to said Company. The Agency agreement provides that the defendant may deduct and retain from premiums collected his commissions at certain specified rates. Insofar as premiums collected by the defendant prior to April 30, 1951 are concerned, the defendant is entitled to deduct and retain from the premiums so collected the commissions payable to him under his agreement. In addition, he is entitled to credit for any premiums actually returned by him prior to April 30, 1951 to the holders of policies which were cancelled prior to that date. As to premiums collected by him after April 30, 1951, the defendant is under a duty to account for them in their entirety.

The accounting to which the plaintiff is entitled is in my opinion a matter for reference to a master under Rule 53 of the Federal Rules of Civil Procedure, 28 U.S.C.A. If the parties cannot agree upon the form of order for such reference, a motion for the entry of an appropriate order should be filed by the plaintiff.