721 P.2d 455 (1986)
79 Or. App. 574
C. Donald AINSWORTH, Director of the Division of Insurance, State of Missouri, and Domiciliary Receiver for Medallion Insurance Company and Missouri General Insurance Company, Appellants,
v.
Richard J. CINCOTTA dba Central West Insurance Agency, A & M Insurance Agency, Abel Insurance Inc., an Oregon corporation, Harry Abel Insurance Agency, Inc., an Oregon corporation, Marney L. Allen Insurance Agency, Allison & DeBar Insurance Agency, Bales & Teater Insurance Agency, Barthelemy Insurance Agency, Bauder & Young, Inc., an Oregon corporation, Beam Colonial Insurance Agency, Beaverton Insurance Agency, Inc., an Oregon corporation, Bellwood Insurance Agency, Bennett Insurance Agency, James Scott Bernard, Berry Insurance Agency, Inc., an Oregon corporation, F.P. Bieker Insurance Agency, Bilyeu-Miller Insurance Agency, Blackaby Insurance Agency, Bowen Agency, Boyd & Company Insurance Agency, Boyer-Brehm, Inc., an Oregon corporation, Broderick Insurance, Inc., an Oregon corporation, Roy D. Brownridge, George Bucholz, Carlin Insurance Agency, James O. Carter, Central East Insurance Agency, Central Oregon, Inc., an Oregon corporation, Clackamas Insurance Agency, Clark Insurance Agency, Carl T. Clark, George J. Combs & Company, George O. Cushman Insurance Agency, Davis-Daley Insurance, Inc., an Oregon corporation, Davis-MacNab Insurance Agency, Diamond Insurance Agency, Diehl-Fullhart Agency, Don DeForest Agency, Edwards Insurance Agency, Elliott, Powell, Baden and Baker Insurance Agency, John Engle, Evergreen Insurance Agency, Howard Fidler Insurance Agency, Warren Fleming Company, Foltz-Ellis Insurance, Ford & Burkle Insurance Agency, Franklin, Goodwin, Knutson & Associates, Fraser-Yamor, Inc., an Oregon corporation, C. Norman Gail, Ben Gerry Insurance Agency, Grade & Morey Insurance, Graepel & Associates, Roger Guinette Agency, Hennessy-Kehoe, Inc., an Oregon corporation, Hillsboro Insurance Counselors, Claude Hockley, Clyde Horney Insurance Agency, Jess Howard, Dick Huddleston, Insurance Associates, Inc., an Oregon corporation, Janvrin & Company, Jensen-Hesse Agency, Jewett, Barton, Leavey & Kern, Jones Insurance Agency, Kasper Insurance Agency, Kelley Insurance Agency, David C. Kent Agency and Ward Cook Insurance Agencies, Inc., Koback & Gross Insurance Agency, Lloyd's Agency, Inc., an Oregon corporation, Lloyd's of MilwaukiePortland Insurance, Inc., an Oregon corporation, Jack C. Lystra, Maudlin-Selisch Insurance Agency, Leroy K. McKown Company, Charles P. Mersereau, Mitchell, Marsh & Dillard, National Insurance Service, Gene Newberry Company, Nolan Insurance Service, Inc., an Oregon corporation, Oliphant & Bates, Inc., an Oregon corporation, Packouz & Steinberg, Inc., an Oregon corporation, Peterson Insurance Agency, Bill Pierce Insurance Agency, Evan Pierce Insurance Agency, the Protectors Insurance, Inc., an Oregon corporation, Lloyd Purdy & Company, Inc., an Oregon corporation, Railton Insurance Agency, Rockwood Insurance Center, Rushlow-Busch Insurance, Sailer's Insurance, Inc., an Oregon corporation, Saling-Dodd, Inc., Salem Insurance, Inc., an Oregon corporation, Sandy Insurance Agency, Sauer & Carpenter Company, Erv Schacht Insurance Agency, Gordon L. Singleton, Larry Slemp Insurance Agency, South Coast Insurance Service, Inc., an Oregon corporation, Paul Sprecher Agency, Vince Swanson, Francis Todd, Troutman, Perrin & Hale, Universal Financial Services, Inc., an Oregon corporation, Valley General Insurance Agency, C.A. Wagner Company, Lou Wilhelm, Inc., an Oregon corporation, Wilson-Heirgood Associates, Wren-Russell, Inc., an Oregon corporation, Yost Insurance Center, an Oregon corporation, Martin & *456 Associates, Inc., an Oregon corporation, Monroe Insurance Center, Larry C. Nelson, Oregon City Insurance Agency, C.K. Otto, Robert F. Petix Insurance Agency, Poe Insurance Agency, Stout Insurance Agency, Talley Insurance Agency, Inc., an Oregon corporation, Titus-Frazee Insurance Agency, Town & Country Insurance Agency, Frank M. Verlander, Western Insurance Center, Inc., an Oregon corporation, Wyman & Martin Insurance Agency, Defendants,
Insurance Counsellors, Inc., an Oregon corporation, L & R Enterprises, Ed Malone Agency, Pioneer Insurance Agency of Oregon, Inc., an Oregon corporation, Ron Rothert Insurance, Inc., an Oregon corporation, Glenn Scott Insurance Agency, Lawrence T. Usher, Inc., an Oregon corporation, Valley Insurance Agency, Wel Pland Insurance, Inc., an Oregon corporation, West Glen Insurance, Inc., an Oregon corporation, dba Valley Insurance Agency, Roy O. Young & Rendall G. Young., Respondents.
A7908-04152; CA A31845.
Court of Appeals of Oregon.
Argued and Submitted October 25, 1985.
Decided June 4, 1986.
William C. Jolley, Jr., Kansas City, Mo., argued the cause for appellant. With him on the briefs were Leslie M. Roberts, Margaret H. Leek Leiberan, and Kell, Alterman & Runstein, Portland, and Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo.
William C. Martin, Portland, argued the cause for respondents. With him on the brief was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.
David J. Buono, Portland, waived oral argument for respondent Ins. Counsellors, Inc.
Ray Fechtel, Eugene, waived appearance for respondent L & R Enterprises.
David Berentson, Lake Oswego, waived oral argument for respondent Ed Malone Agency.
No appearance for respondent Pioneer Ins. Agency of Oregon, Inc.
Lon H. Bryant, Wilsonville, waived oral argument for respondent Ron Rothert Ins., Inc.
*457 Thomas W. Brown, and Cosgrave, Kester, Crowe, Gidley & Lageson, Portland, attorneys for respondents Glenn Scott Ins. Agency and Wel Pland Ins., Inc., joined in the brief filed by William C. Martin for respondents.
Amy L. Houchen, and Meyer & Wyse, Portland, filed the brief for respondent Lawrence T. Usher, Inc.
Gerald R. Pullen, Portland, waived oral argument for respondents Valley Ins. Agency and West Glen Ins., Inc.
Harrison R. Winston, Roseburg, waived oral argument for respondents Roy O. Young & Rendall G. Young.
Before RICHARDSON, P.J., and WARDEN and NEWMAN, JJ.
RICHARDSON, Presiding Judge.
Plaintiff, the Director of the Missouri Division of Insurance, is the domiciliary receiver of Medallion Insurance Company and Missouri General Insurance Company (hereafter "the Medallion companies" or "the companies"). The companies, incorporated and domiciled in Missouri, were declared insolvent on September 12, 1975. Defendant Cincotta, dba Central West Insurance Agency, was the companies' general agent in Oregon. The other defendants are 134 insurance agents, brokers or agencies that sold the companies' insurance in Oregon. Plaintiff brought this action to recover unpaid premiums, both earned and unearned, and unearned commissions that he alleges defendants owe the companies.[1] Some of the defendants filed motions under ORCP 21A(8) to dismiss his amended complaint for failure to state a claim, and the trial court granted their motions and entered judgments accordingly.[2] Plaintiff appeals. We reverse and remand.
After alleging his appointment as receiver and the powers thereby vested in him and explaining who the defendants are, plaintiff alleged:

"IV.
"The Defendant General Agent [Cincotta] entered into separate oral agency agreements (or written agreements not in Plaintiff's possession) with each and every Individual and Sub-Agent Defendant on behalf of Medallion and/or Missouri General, to which Medallion and/or Missouri General were third-party beneficiaries or were otherwise parties in interest. Said agency agreements continued (with the exception of those Defendants marked with an asterisk on Exhibit `A') the same terms and conditions of the prior agency relationships between said Individual and Sub-Agent Defendants and Medallion and/or Missouri General, as evidenced by various agency agreements, of which copies are attached hereto and incorporated herein by reference as Exhibit `C'. * * *
"With respect to Defendants whose names are marked with an asterisk on Exhibit `A', the Plaintiff alleges that said Defendants agreed to solicit insurance *458 business on behalf of Medallion and/or Missouri General in accordance with the standard customs and practices in the industry, as reflected in the terms and conditions of Exhibits `B' and `C', including the obligation to remit insurance premiums and unearned commissions to Medallion and/or Missouri General or their successors in interest.[3] * * *

"V.
"Pursuant to said agency agreements and in accordance with obligations voluntarily incurred by said Defendants as insurance agents or brokers, all of said Defendants independently of one another were engaged in the business of soliciting policies of insurance issued by Medallion and/or Missouri General and received or were bound to collect insurance premiums due on such policies on behalf of Medallion and/or Missouri General.
"Upon entering into said agency agreements on behalf of Medallion and/or Missouri General and their successors in interest, Defendant Sub-Agents and Individual Defendants consented to and assumed fiduciary responsibility with respect to the collection and payment of insurance premiums, including unearned commissions, due Medallion and/or Missouri General; and the Defendant General Agent became jointly responsible with each Individual and Sub-Agent Defendant for the collection and payment of insurance premiums, including unearned commissions due Medallion and/or Missouri General.
"* * *

"VII.
"Although requested to do so, or with notice of such request to the Defendant General Agent, said Individual and Sub-Agent Defendants have failed and refused to account for, pay over, and deliver all unpaid premiums, including unearned commissions, * * * and any other funds of Medallion and/or Missouri General which came into their possession or control, for which they are legally responsible as alleged above, in violation of the orders of the Circuit Court of Jackson County, Missouri, and the statutes and laws of the States of Missouri and Oregon."
The prayer for relief requested that defendants pay to plaintiff over $250,000 in earned and unearned premiums and unearned commissions, plus interest.[4]
In reviewing the lower court's dismissal pursuant to ORCP 21A(8), we accept as true the allegations of plaintiff's amended complaint and any facts which might conceivably be adduced as proof of those allegations. Ollison v. Weinberg Racing Assoc., 69 Or.App. 653, 656, 688 P.2d 847 (1984).
ORS chapter 734 sets forth the procedures to be followed in the event of the insolvency of an insurer.[5] More particularly, *459 the Uniform Insurers Liquidation Act (UILA), ORS 734.030 to 734.080 and 734.240 to 734.330, governs the insolvency of an insurer doing business in more than one state. "The domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this state to recover any assets of such insurer to which the domiciliary receiver may be entitled under the laws of this state." ORS 734.250. ORS 734.240(2) provides:
"The domiciliary receiver of an insurer domiciled in a reciprocal state, shall be vested by operation of law with the title to all the property, contracts and rights of action, and all the books and records of the insurer located in this state and the domiciliary receiver shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this state. * * *" (Emphasis supplied.)
A "reciprocal state" is "any state other than this state in which in substance and effect the provisions of the Uniform Insurers Liquidation Act, as defined in ORS 734.330, are in force, including the provisions requiring that the commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer." ORS 734.050(3).
Missouri has enacted the UILA in substance and has a provision requiring that the director of the division of insurance be appointed as receiver of any delinquent insurer. V.A.M.S. §§ 375.950 to 375.990. Having reviewed the Missouri statutes, we conclude that Missouri is a "reciprocal state." "Domiciled" is not defined by statute, but "domiciliary state" means "the state in which an insurer is incorporated or organized." ORS 734.050(1). Plaintiff's amended complaint alleged that the Medallion companies were "chartered and domiciled" in Missouri. Accepting that as true, we conclude that the companies were insurers "domiciled in a reciprocal state" under ORS 734.240(2) and that plaintiff, as their domiciliary receiver, has, under the same statute, the "right to recover balances due from local agents."
The issue, then, is what balances were due from the defendants at the time of the Medallion companies' insolvency. The "Managing General Agent's Agreement," which plaintiff alleged in paragraph IV of his amended complaint to be applicable to some of the defendants, provides in relevant part:
"2. The Agent is authorized to * * * collect and receipt for premiums * * all in accordance with the terms of this Agreement, the Company's manuals, rate books or cards, rulings in force at the time, specific instructions from the Company to the Agent, and in addition the Agent shall at all times exercise the best judgment in furthering the best interest of the Company.
"* * *
"4. The Agent shall submit to the Company within 30 days after the last day of each month, a statement of account current of the business transacted for the Company during such month.
"5 The Agent shall pay to the Company the net balance due for business written not later than 30 days after the last day of the month in which policies become effective.
"6. In the event of cancellation of any policy issued by the Agent, or of a return premium found due an insured on any policy during the continuance of, or after the termination of, this Agreement, the Agent shall repay the Company the commission on the unearned premium previously allowed the Agent.
"* * *
*460 "9. The Company agrees to allow the Agent a commission, per schedule attached, on the net premiums paid to and received by the Company in cash upon business written for the Company by the Agent (net premiums meaning premiums charged, less return premiums allowed, to the insureds), the same to be in full satisfaction of all claims upon the Company for services rendered by the Agent. It is expressly agreed, however, that all moneys due the Company on business written by the Agent shall be held by and chargeable to the Agent as a fiduciary trust for and on behalf of the Company, and the commissions allowable to the Agent shall be considered a debt from the Company to the agent even though the Company may allow the Agent to deduct such commissions in remitting the amount due the Company."
The "Agency Agreement," which plaintiff contends is directly or indirectly applicable to all of the defendants involved in this appeal, provides:
"II. AUTHORITY OF AGENT
"a. The Agent is an independent contractor, not an employee of the Company and, subject to restrictions imposed by law, the terms and conditions of this Agreement, and the underwriting rules and regulations of the Company as may be stated from time to time, is authorized to:
"* * *
"3. Collect, receive and receipt for premiums and to retain as full compensation on business so placed with the Company, commissions * * *. The Agent agrees to return commissions on policies cancelled, at the same rate at which such commissions were originally retained."
The agreement required the agent to remit the "balance due" on an account before a certain date. The accounting method employed by the companies and defendants was evidently the "account current" method. An account current is "`the insurance agent's statement of policies written and premiums returned on cancellation during the month, net premiums being recorded whether paid or not.'" Korlann v. E-Z Pay Plan, 247 Or. 170, 173, 428 P.2d 172 (1967), quoting 16 Appleman, Insurance Law and Practice 229, § 8786 (1944). Under that method, defendants remitted to the companies the net balances due after deducting their commissions and the premiums to be returned to policyholders due to cancellation of policies.
Plaintiff contends that, under ORS 734.240(2) and the agency agreements, he is entitled to collect from defendants all unpaid premiums and unearned commissions and that, pursuant to ORS 734.370, defendants are not entitled to deduct the unearned premiums from the amount due the companies. Defendants respond that the policyholders are entitled to the unearned premiums and the unearned commissions. Furthermore, they argue that, because the Medallion companies were declared insolvent, the companies did not earn any premiums at all and that, therefore, plaintiff is entitled to collect nothing.
We will first address the question of earned premiums. There is no authority for the proposition that a receiver of an insolvent insurer is not entitled to recover the portion of a premium covering the policy period before insolvency. Contrary to defendants' argument, the companies did earn that portion of the premium. During the period before insolvency, the policies were in full force and effect, and the companies thus earned the premiums for that coverage. The subsequent insolvency of the companies did not change that. Plaintiff's amended complaint states a cause of action for the collection of the earned premiums.
Plaintiff argues that, under ORS 734.370, defendants are not entitled to withhold the unearned premiums. That section provides:
"No offsets shall be allowed in cases of mutual debts or mutual credits between the insurer and another person in *461 connection with any delinquency proceeding under this chapter, except for cases of policy loans and cases of reinsurance."
We agree with plaintiff. Under the accounting method employed by the companies and defendants, there were mutual debts and credits between them. Defendants were indebted to the companies for the premiums on policies which they wrote. The companies were indebted to defendants for commissions and return premiums on cancelled policies. Defendants' accounts were credited for the amount of unearned premiums when policies were cancelled. Defendants argue that they are entitled to offset their credit for unearned premiums against plaintiff's claim for unpaid premiums. That is precisely what ORS 734.370 prohibits. To allow defendants to do so would give the policyholders to whom they returned the premiums or for whom they purchased other insurance an unfair preference over other policyholders whose agents sent the premiums to the insurer, as well as preferences over other creditors. The former would receive the full amount of their premiums, but the latter would only share in the insolvent insurer's estate with other creditors. See Bohlinger v. Ward & Co., 20 N.J. 331, 120 A.2d 1 (1956); Korlann v. E-Z Pay Plan, supra (O'Connell, J., dissenting). The scheme of the UILA is for the domiciliary receiver to marshal the assets of an insolvent insurer and distribute them to those with claims against the insurer pursuant to the priorities set forth in the act. To allow defendants to offset their claims for unearned premiums would disrupt that scheme.
Defendants argue that allowing plaintiff to collect all unpaid premiums, including unearned premiums, is contrary to Korlann v. E-Z Pay Plan, supra, where the court held that an insurance agent was entitled to set off the amount of unearned premiums due from the insolvent insurer against the receiver's claim for unpaid premiums. Korlann is readily distinguishable, because ORS 734.370 was not in force at the time it was decided. We conclude that plaintiff has stated a claim for unearned premiums.[6]
Finally, we address the issue of unearned commissions. Under paragraph 6 of the Managing General Agent's Agreement, an agent was required to return all commissions on cancelled policies or return premiums to the companies. Plaintiff has alleged in paragraph IV of the amended complaint that some of the defendants agreed to conduct business in accordance with industry customs and standards, including those provisions of the Managing General Agent's Agreement. We must assume that plaintiff could prove that those defendants did so and that the agreement indeed reflects industry customs and standards. Therefore, with respect to those defendants, plaintiff has clearly stated a cause of action for the collection of unearned premiums.
Plaintiff alleged that the other defendants were bound by the terms of the Agency Agreement. That agreement provides in section II.a.3. that the agent agrees to return commissions on cancelled policies, but it does not expressly state to whom the commissions should be returned. Defendants argue that the unearned commissions were to be returned to the policyholders; plaintiff argues that they were to be returned to the companies. Plaintiff's interpretation is more plausible. First, the agreement refers to commissions as compensation from the companies. It logically follows that a "return" would be remitted to the source of those commissions, the companies. That the agents deducted their commissions from the premiums before they remitted the net premiums due does not change the result. Furthermore, the agreement also provides that, when the companies directly billed the policyholder:
"Commissions on premiums shall be paid to the Agent within thirty (30) days after the end of the month in which such *462 premiums are received and recorded by the Company, subject to offset by the Company of any return commissions due from the Agent."
That supports plaintiff's argument that the companies were entitled to the unearned commissions. Furthermore, we must assume that plaintiff could produce evidence that supports his interpretation of the agreement. Thus, we also conclude that plaintiff has stated a claim for unearned commissions against those defendants who allegedly are bound by the Agency Agreement.
Plaintiff has stated a claim for unpaid premiums, both earned and unearned, and unearned commissions. The trial court erred in dismissing his amended complaint.
Reversed and remanded.[7]
NOTES
[1] The parties submitted an "Agreed Statement of Facts" to the trial court, which included the following definitions:

"(a) `earned premiums' are that portion of premiums generated on the Medallion companies' policies sold by the defendant agents which were attributable to coverage during the policy period prior to the cancellation of the policies by the Missouri receivership court as of September 12, 1975;
"(b) `unearned premiums' are that portion of premiums generated on the Medallion companies' policies sold by the defendant agents which were attributable to coverage during the policy period following the court's cancellation of the policies as of September 12, 1975;
"(c) `unearned commissions' are that portion of the total commissions generated on the policies which are calculated as a percentage of the unearned premiums, i.e., those attributable to the period following the court's cancellation of the policies as of September 12, 1975."
[2] Initially, 84 defendants moved for dismissal. Later, another 12 did so. The trial court granted both motions and entered two judgments, both of which complied with ORCP 67 B. Plaintiff filed timely notices of appeal from both, and the appeals have been consolidated. Defendant Cincotta is not involved in these appeals.
[3] Exhibit B was a copy of the Managing General Agent's Agreement between the Medallion companies and defendant Cincotta. Exhibit C was a copy of the Agency Agreement between the companies and some of their agents. As we understand paragraph IV of the amended complaint, plaintiff alleges that some of the defendants entered into written or oral agreements with defendant Cincotta on behalf of the companies equivalent to the Agency Agreement. Those that did not, plaintiff alleges, agreed to solicit insurance on behalf of the companies in accordance with industry custom, as reflected in the Managing General Agent's Agreement and the Agency Agreement, including the obligation to remit premiums and unearned commissions to the companies or their successor in interest. Although the parties have not so indicated in their briefs, our review of the record indicates that both groups of defendants are involved in this appeal.
[4] It is not certain how defendants disposed of the premiums in their possession when the Medallion companies were declared insolvent. Plaintiff suggests that they either returned them to the policyholders or used them to purchase insurance from other companies for the policyholders. It is also possible that defendants had not even collected some of the premiums from the policyholders.
[5] ORS 734.010 provides:

"(1) This chapter shall apply to:
"(a) All persons transacting or purporting to transact insurance as insurers in this state; and
"* * * * *
"(2) The term `insurer,' when used in this chapter shall include all persons enumerated in subsection (1) of this section."
[6] We have reviewed defendants' other arguments against applying ORS 734.370 in this case, and we find them unpersuasive.
[7] Plaintiff requests not only that we reverse the judgments of the trial court, but also that we enter a summary judgment in his favor. Plaintiff moved for summary judgment in the trial court, but that motion was evidently not decided. We have no jurisdiction to grant that motion in the first instance.