Anthony Barbiero, J.
Decision after trial "for defendant on an agreed. statement of facts. Plaintiff’s cause of action is dismissed.
The statement “ This is a case of first impression” has been used by courts almost to the point of meaninglessness. "Unfortunately I can find no more apropos phrase to cover the situation now. confronting this court. Extensive research, independent of the very competent memoranda of law -submitted by both sides, has failed to produce a single published case pertinent to this matter. There are, however, several statutory sections *673 that are called into play. An interpretation of the interrelationship of these various laws must serve as the foundation of this decision.
According to the agreed statement of facts, which of* necessity must be referred to in detail, a Mr. Hosier, hereafter referred to as the assured, desired auto insurance on a motor vehicle owned by him and went to an insurance broker, who advised him he .would, have to apply for coverage under the New York Assigned Bisk Plan. This the assured did. The broker computed the premium to be $424, based upon information contained in the assured’s application; namely, that he had no violations or accidents. A check for $130 was submitted with the application as a down payment against this amount. The broker then arranged .with the plaintiff for premium financing for the balance of the premium, less any commissions ($251.60). This amount was sent to the defendant, the insurer assigned under the plan.
After the $251.60 was received, the defendant ran a check on the assured and found he had in fact several violations on his record. The defendant then recomputed the premium based on this new information and arrived at yearly premium of $634. The defendant then issued notification of the increase to the assured and the broker only. No notice was sent to the plaintiff.
Thereafter there was a default in payment to the plaintiff and the policy was canceled for nonpayment. Defendant sent a check to plaintiff in the sum of $259.20 which was figured on a premium of $634, deducting the earned premium on the additional premium of $210.
The amount in dispute is $54.40, the difference between the unearned portion of the premium as originally calculated and the unearned portion after the subsequent recalculation and increase.
The question presented is whether the plaintiff finance company was entitled to notice of the premium increase at the time the assured and the broker were so notified.
The policy involved here was one issued under the Assigned Risk Plan. Such a plan is authorized under section 63 of the Insurance Law: ‘ ‘ The superintendent shall, after consultation with the insurers licensed to write motor vehicle liability insurance in this state, approve a reasonable plan or plans for the equitable apportionment among such insurers or applicants for such insurance who are in good faith entitled to but are unable to procure insurance through ordinary methods and, when such plan has been approved, all such insurers shall subscribe thereto and participate therein.”
*674 The actual machinery for such a plan is known as the New York Automobile Insurance Plan. The various sections recite the duties and obligations of those insurance companies participating in the plan. The pertinent .section for consideration is section 14, which deals with the notice to be given to the applicant. The notice is given '.either by issuing the policy requested or by a binder if information needed to complete the application is missing. Following paragraph (3) of subdivision A of section 14 there is a one-sentence statement: ‘ ‘ The producer of record (broker) shall be notified as to the disposition of the assignment in accordance with foregoing paragraphs (.1) to (3).”
Subdivision B of section 14 refers to renewals of existing assigned risk policies and, like the preceding subdivision A, requires notice to be given only to the assured and the producer of record. No .other section of the plan provides for more notification.
Article XII-B of the Banking Law covers insurance premium finance agencies. From the various sections (554-578) it appears to the court that a premium finance .company, such as the plaintiff, is clearly a creature of statute and as such must be bound by those statutes. Subdivision 8 of section 554 defines just what a premium finance agreement is and how payments are made under it: “ 8. ‘Premium finance agreement ’ means a promissory note or other written agreement by which an insured promises or agrees to pay to or to the order of, either a premium finance agency or an insurance agent or broker the amount advanced or to be advanced under the agreement to an authorized insurer or to an insurance agent or broker in payment of premiums on an insurance contract, together with a service charge as authorized and limited by law. If the premium finance agreement is payable to, or to the .order of, .an insurance agent or broker not licensed as .a premium finance agency, payments under the agreement must be payable at the office of a premium finance agency named in the agreement, to whom the agreement is by its terms to be and is subsequently assigned.”
The very nature of the premium finance agreement as defined precludes the necessity of giving notice of an increase to the premium finance company by the defendant. The agreement is a contract between the assured and the premium finance company for a set amount; the company agrees to pay the assured’s premium of X dollars, in return the assured agrees to make fixed payments to the premium finance company in order to repay the money advanced on his behalf. Notice by the insurance company of an increase in premium due to incorrect information on qn, *675 application, or for some other reason, would have no effect on this agreement. It is a valid contract, fully capable of being performed by both sides. The assured has notice of the increase. It is his duty to proceed at that time. As long as he continues to meet his payments to the premium finance company the terms of the agreement are met. How he handles the increase is his business.
In conclusion it is the court’s decision that the contractual nature of the premium finance agreement and the specific notice sections of the Assigned Risk Plan preclude the necessity of notice to the plaintiff of a premium increase. iCase dismissed.
It would appear to the court that the plaintiff’s remedy should lie in either of two avenues.
(a) To demand from the assured a sworn statement as to any prior convictions and full disclosure before acceping his or her application for a loan, or
(b) :Seek legislative enactment for appropriate legislation to avoid recurring incidents of a similar nature.