168 N.J. Super. 402 (1979)
403 A.2d 53
JAMES J. SHEERAN, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, ANCILLARY RECEIVER OF GATEWAY INSURANCE COMPANY IN LIQUIDATION, PLAINTIFF,
v.
SAMUEL SITREN, INDIVIDUALLY AND T/A MANALAPAN AGENCY, INC., AND MANALAPAN AGENCY, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 23, 1979.
*407 Mr. David Paul Ericksen for plaintiff (Messrs. Weinberg, Manoff and Dietz, attorneys).
Mr. Ralph A. Grieco for defendants.
WEISS, J.D.C. (temporarily assigned).
Plaintiff James J. Sheeran, Commissioner of Insurance, State of New Jersey (Sheeran), brings this action as ancillary receiver of the Gateway Insurance Company of Philadelphia Pennsylvania (Gateway), pursuant to N.J.S.A. 17:30-1 et seq. The insurance company was placed in ancillary receivership in New Jersey on August 25, 1974. By court order dated January 9, 1978, Manalapan Agency, Inc., (Manalapan) was substituted for Sitren, t/a Manalapan Agency, Inc., which was an agent and broker for the liquidated insurance company.
This opinion follows two hearings in this matter. The first, on a motion for partial summary judgment, was decided on June 20, 1978 on briefs supplemented by oral argument. The second was a summary trial on stipulated facts, briefs and oral argument heard on January 26, 1979.

I
Sheeran, as ancillary receiver, alleges that $19,609.58 is due and owing to Gateway from finance companies pursuant to financing agreements with Gateway insureds for earned premiums on policies placed by Manalapan.
*408 The issues considered in the first hearing are: (1) whether defendant was relieved of any liability to remit premiums because the insurance policy was financed by an independent financing company, and (2) what effect does a stipulation of settlement between Manalapan and one of the finance companies have on Sheeran's attempt to recover these monies?
Sheeran contends that Manalapan was under a duty to remit these earned premiums to Gateway under N.J.S.A. 17:22-6.2a and challenges Manalapan's contention that this statute is inapplicable where an insurance policy is financed by an insurance premium finance company as permitted by our state statutes. See N.J.S.A. 17:16D-1 et seq.
Under N.J.S.A. 17:22-6.2a:
Any insurer which delivers in this State to any insurance broker a contract of insurance * * * pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.
The underlying purpose of the statute is to protect the insurance-buying public from any misappropriations, conversion or other misconduct an insured may suffer at the hands of a broker who is used by the insurer as a conduit to collect and remit premiums. Kubeck v. Concord Ins. Co., 103 N.J. Super. 525 (Ch. Div. 1968), aff'd 107 N.J. Super. 510 (App. Div. 1969).
However, once a broker delivers a policy of insurance, he incurs a concomitant responsibility to collect and remit premiums to the insurer, Kubeck v. Concord Ins. Co., supra, 103 N.J. Super. 525 at 533; Spilka v. South American Managers, Inc., 54 N.J. 452 (1969); 43 Am.Jur.2d, Insurance, *409 § 150 at 205. The duty to remit earned premiums creates a principal-agent relationship between the insurer and the broker. In Spilka, supra, plaintiff, the owner of a financing business notified various insurers, through its general agent, that the premiums were financed for specified policies. Further, plaintiff notified the insurers that the right to any unearned premium had been assigned to plaintiff, and upon any cancellation of those policies, plaintiff, as assignee, was entitled to recover unearned premiums from the insurer.
Justice Hall, speaking for the court, stated that the broker "was the agent of the insurer for the receipt of premiums, even though he was also the agent of the insured in procuring the insurance, and thus, payment to him legally amounted to payment to the insurer." Id. at 463. The court further noted that N.J.S.A. 17:22-6.2a is based on the equitable practicalities of the insurer-insured relationship:
* * * [I]t would be grossly inequitable to compel an insured to follow premium monies in order to see that they are actually received by the insurer when they had been paid to one who had actual or apparent authority from the insurer to receive them. [at 463-464]
Plaintiff cites a number of other cases which substantially agree with the holding in Spilka. See Commercial Ins. Co. of Newark v. Apgar, 111 N.J. Super. 108 (Law Div. 1970); Seabrook Farms, Inc. v. Commercial Ins. Co., 104 N.J. Super. 419 (Ch. Div. 1969); Mt. Vernon Fire Ins. Co. v. Gillian, 95 N.J. Super. 279 (App. Div. 1967). This court recognizes that the case law in New Jersey follows the general rule that the broker owes a duty both to the insured and the insurer; the broker, on placing the policy with the insurer as agent for the insured, then becomes the agent of the insurer to deliver the policy to the insured and to collect and remit premiums. 43 Am. Jur.2d, Insurance, § 150 at 205.
*410 Defendant Manalapan argues that N.J.S.A. 17:22-6.2a is not applicable here because the premium finance company paid the premiums in question and therefore obviated the need to protect the insured from "misappropriation, conversion, or other misconduct of an insurance broker."
Insurance premium financing gives the insured a means to buy insurance and pay for it in manageable periodic payments plus a finance charge through the financing company. N.J.S.A. 17:16D-1 et seq., the Insurance Premium Finance Company Act, defines an insurance premium finance agreement as:
* * * an agreement by which an insured or prospective insured promises to pay to a premium finance company either directly or indirectly the amount advanced or to be advanced under the agreement by said premium finance company to an insurer or to an insurance agent or insurance broker in payment of premiums on an insurance contract together with a finance charge as authorized and limited by this act. [N.J.S.A. 17:16D-2(b)]
Underlying this agreement is the ongoing relationship between the insured and the insurer. The interjection of the premium finance company does not alter this relationship. The Legislature carefully set out the rights and the responsibilities the financing company acquires when it finances insurance premiums.
The company cannot cancel a contract of insurance without giving at least ten days' written notice to the insured and an opportunity to cure any default. N.J.S.A. 17:16D-13. When a financed insurance contract is cancelled, the insurer on notice of such financing shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company. N.J.S.A. 17:16D-14(a).
The rights of the premium finance company have been further clarified in Broadway Bank & Trust v. New Jersey Property-Liab. Ins., 146 N.J. Super. 80 (Law Div. 1976), which held that a banking corporation which was authorized to conduct an insurance premium financing business had any *411 rights the insured had to unearned premiums of an insolvent insurer. The assignments were found to be for a valuable consideration and as such the finance company became vested with all choses in action the assignor might have.
Other jurisdictions have recognized the validity of insurance premium financing plans. See Edgewood Service Co. v. State Farm Auto Ins. Co., 80 Misc.2d 672, 367 N.Y.S.2d 370 (D.Ct. 1975); Kaufman v. McLaughlin Co., 123 U.S. App. D.C. 92, 357 F.2d 283 (1966); Chamberlain v. Employers' Liab. Assur. Corp., 289 Mass. 412, 194 N.E. 310 (Sup. Jud. Ct. 1935). From the case law interpreting chapter 16D of Title 17, it is clear that the premium finance company steps in the shoes of the insured for all payments and setoffs while leaving the insured-insurer relationship intact.
A second important consideration is plaintiff's authority and responsibility under N.J.S.A. 17:30-1 et seq. Under N.J.S.A. 17:30C-1 the receivership is seen as an analog to the appointment of a receiver for an insolvent corporation. Central-Penn Nat'l Bank v. New Jersey Fidelity & Plate Ins. Co., 119 N.J. Eq. 265 (Ch. 1936). N.J.S.A. 17:30C-11 to 14 sets forth the policy of conserving the assets of a foreign insurer within this State. Further, the Commissioner of Insurance, as ancillary receiver, like a trustee in bankruptcy under the Bankruptcy Act, is
* * * vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer located in this State, and he shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this State. [N.J.S.A. 17:30C-16(b)]
The immediate goal of the ancillary receiver is to settle special deposit claims and secured claims which are proved and allowed in the ancillary proceedings. N.J.S.A. 17:30C-16.
The interjection of an independent premium finance company does not alter the essential nature of the insured-insurer *412 relationship. The duty of the broker to remit earned premiums is not obviated because the insured sought a means to finance those premiums. Payment of the premiums by the premium finance company to the broker amounts, in effect, to payment to the insurer. Because the insurer here is insolvent and now succeeded by an appointed ancillary receiver, the necessity for recovery of these earned premiums is even greater. The State has evidenced its interest in recovering earned premiums so that equitable distribution can occur.
Manalapan further alleges that it is entitled to credit on the basis of a stipulation of settlement in a prior action. The stipulation settled a case between Manalapan and Associated Financial Agents, Inc. (Associated), a premium finance company. Defendant asserts that Associated, for consideration, waived all rights to any credits made to Manalapan by Gateway or Acme Assurance Agency prior to September 1, 1975, in connection with finance agreements written by Associated and for which premiums were adjusted by cancellation prior to September 1, 1975. The relevant section of the stipulation reads as follows:
* * * 6. Associated Financial hereby waives all rights to any credits made to defendants, Manalapan Agency, Inc. by Gateway Insurance Co., or Acme Assurance Agency prior to the date of September 1, 1975 in connection with finance agreements written by plaintiff [Associated] and for which premiums were adjusted by cancellation prior to September 1, 1975; provided that any credits or other payments on account of returned premiums for cancellation by Gateway or its agent credited to Manalapan subsequent to September 1, 1975, shall be paid over to plaintiff.
Sheeran avers that the plain reading of the language of the stipulation of settlement demonstrates the lack of intention of the parties to this agreement to assign any right to Manalapan, but on the contrary clearly and unambiguously assigns a right in the finance company to such credits as Manalapan may be entitled from the estate. Alternatively, if Manalapan's interpretation of the stipulation is deemed correct, the court *413 must recognize the equitable doctrine of "superior equity" as superseding the stipulation in question.
Generally litigants should be held to their stipulations and the consequences thereof. Jersey City v. Realty Transfer Co., 129 N.J. Super. 570, 573 (App. Div. 1974), aff'd 67 N.J. 104 (1975). However, stipulations are to be construed with reference to their subject matter and in light of the surrounding circumstances; further, the rules applicable to the construction of contracts are utilized for understanding stipulations. 83 C.J.S. Stipulations § 11-12 at 26. In Howe v. Lawrence, 22 N.J.L. 99 (Sup. Ct. 1849), the Chief Justice recognized that
[J]ustice requires that agreements fairly made between attorneys or parties in the progress of a cause, relating to the conduct of the suit, should be fairly and faithfully enforced, not because they are technically contracts, and legally binding upon the parties, but because the administration of justice is thereby facilitated. [at 104]
The courts, in enforcing stipulations, must view the position of all parties to insure that some valuable right of a party is not unjustly sacrificed without reason or authority. See Leonia v. Fort Lee, 56 N.J. Super. 135 (App. Div. 1959).
The equities are against enforcement of this stipulation. Manalapan claims these credits are in the form of an equitable assignment of all right of Associated to certain credits. An equitable assignment is an assignment unenforceable in a court of law but which a court of equity will recognize and imply from the circumstances and because of the equities involved. It is recognized solely because the assignee is a purchaser for value. 6A C.J.S. Assignments § 53(a) at 670; Black's Law Dictionary, 632 (4 ed 1968).
No particular form is necessary to constitute an equitable assignment, yet case law in this State has recognized a number of essential elements. The intention of the assignor must be to transfer a present interest in an existing fund or subject matter, or one reasonably ascertainable, American *414 Pin Co. v. Wright, 60 N.J. Eq. 147, 149 (Ch. 1900), aff'd 85 N.J. Eq. 219 (E. & A. 1901). The language or phraseology employed is not material. 60 N.J. Eq. at 152. There must be an absolute appropriation of the fund or subject matter by the assignor and an intention to vest a present right in the assignee. Myers v. Forest Hill Gardens Co., 103 N.J. Eq. 1, 2 (Ch. 1928), aff'd 105 N.J. Eq. 584 (E. & A. 1929). Further, the assignor must relinquish all control over the fund; if any control is retained, the assignment will be invalid. Weaver v. Atlantic Roofing Co., 57 N.J. Eq. 547, 554 (Ch. 1898). The effect of the transfer should be that no power remains with the assignor to revoke or control the disposition made. Id. at 554. Because the transaction here is by stipulation in writing, the intentions of the assignor to strip himself of any vestiges of control must be construed in light of all circumstances under the general rule of law. Structural Gypsum Corp. v. National Commercial Title and Mtg. Guar. Co., 107 N.J. Eq. 32, 40 (E. & A. 1930); Weaver v. Atlantic Roofing Co., supra 57 N.J. Eq. at 554; 6A C.J.S. Assignments § 53(c) at 674. The assignment must also be based on valuable consideration. Structural Gypsum Corp., supra 107 N.J. Eq. at 40.
Whether a transaction constitutes an equitable assignment, is to be decided from the circumstances and equities involved. An equitable assignment is implied because "equity looks upon that as done which ought to have been done." Two cases specifically apply this equitable maxim to achieve just results. Burke v. Hoffman, 28 N.J. 467 (1958), and Bohlinger v. Ward & Co., 20 N.J. 331 (1956).
Burke v. Hoffman arose out of interpleader by a firm holding a fund from the sale of a bankrupt corporation's real estate against a broker and transferee in bankruptcy, both of whom claimed the fund. Franmar Realty Co. was adjudicated a bankrupt on January 21, 1957. On June 14, 1957 defendant purchased from Franmar's trustee in bankruptcy his right, title and interest in all of the bankrupt's real property. However, there were outstanding holders of *415 record liens for monies loaned, labor performed and materials provided for the construction of the houses. The Supreme Court found no fund materialized upon which the assignment could operate (liens upon the house and lot had exhausted the purchase price). Further, the court stated that,
* * * even when the fund comes into being the doctrine of equitable assignment involves the exercise of a sound discretion, according to the principles of equity and essential justice in the particular circumstances and the requirements of positive law and sound public policy. [Id. 28 N.J. at 474]
The court concluded by noting there is no equity in favor of the broker as against the holders of record liens. "It would be contrary to equity and good conscience where a broker accorded priority over the very liens that made construction possible." Id. at 474. Where the equities are equal, the maxim "first in time, first in right" should prevail. However, where this is a "superior equity," equitable assignment should not be applied strictly.
In Bohlinger v. Ward, supra, plaintiff, statutory liquidator of a New York insurance company, sought a judgment against defendant-agent of that insurance company to account for and pay certain premiums. Defendant admitted it was holding premiums but asserted it was entitled to certain setoffs. Defendant argued that the principal-agent relationship had been modified in subsequent dealings creating a debtor-creditor relationship. The credits represented unearned premiums defendant had gathered during a ten-day period before the entry of the order of liquidation. The court held:
* * * there [was] a vast difference between an unearned premium credit on a policy cancelled at the request of the policy holder or the company in the ordinary routine of the operation of the agency and the credits claimed here arising from a wholesale operation requested neither by the company nor the policy holders but embarked upon by the defendant in its own self-interest to preserve the good will of the customers. [Id. 20 N.J. at 336]
*416 The court further stated that allowance of the claimed credit would in actuality sanction a preference at the expense of other policy holders and creditors.
In the present case this court can find no justification for defendant to keep the earned premiums of Gateway. Unlike the agent in Bohlinger, who was at least protecting his customer's interests, defendant here is attempting to keep earned premiums which ordinarily would go to Gateway, protecting only its own interests.
The equities here weigh heavily in favor of the statutorily created ancillary receiver. A broker under the laws of this State has a responsibility to collect and remit premiums to the insurer. The introduction of a premium finance company does not alter the principal-agent relationship. Allowing Manalapan to keep these earned premiums and credits would give it a preference in detriment of the interests of others.
Further, the doctrine of "superior equity" recognizes the importance of effectuating sound public policy. The equitable assignment is not a rigid legal doctrine. It is to be utilized to promote fairness. Where an equitable assignment is enforced to defeat a plaintiff who is attempting to collect monies to distribute to numerous creditors pursuant to the laws of this State, the exercise of sound discretion is violated.
These monies in the ordinary course of business would have been remitted to Gateway. For the above reasons defendant is required to remit all earned premiums on insurance policies cancelled pursuant to law and those monies which represent earned premiums on policies which expired and/or were underwritten by the Joint Underwriting Association.

II
The sole issue under consideration in the second hearing is whether Manalapan, as agent-broker, is entitled to set-off premiums which were unearned due to cancellation *417 of insurance policies against the amount of premiums earned by but not paid to Gateway by Manalapan.
Manalapan contends, under several theories, that the relationship between Manalapan and Gateway was that of debtor-creditor and as such would authorize the ancillary receiver, Commissioner of Insurance, to set-off the unearned premiums under N.J.S.A. 17:30-1 et seq., by reference to N.J.S.A. 17:9A-272(A) (3) and (4). This mandates settlement with debtors or creditors and allowance of proper set-offs on behalf of the insolvent company.
This reasoning would be compelling if Manalapan were the ultimate debtor or creditor and the amounts due were mutual debts and credits between the same parties. See discussion of common law and statutory set-offs in Tumarkin v. First Nat'l State Bank of N.J., 142 N.J. Super. 304 (App. Div. 1976), aff'd 75 N.J. 373 (1978).
Many cases have approached the question of setting off unearned premiums by analyzing the specific relationship between the insurance company and the agency to determine whether a debtor-creditor relationship existed, frequently basing the decision on special facts found. Bohlinger v. Ward, 34 N.J. Super. 583 (App. Div. 1955), aff'd 20 N.J. 331 (1956); Newman v. Hatfield Wire & Cable Co., 113 N.J.L. 484 (E. & A. 1934); Bohlinger v. Kagan, 147 F. Supp. 910 (D.C., D.R.I. 1956); Bushnell & Mitchell, 160 F. Supp. 608 (D.C., S.D. Ala. 1958); Bohlinger v. Mayville Realty Co., 135 N.Y.S.2d 865 (Sup.Ct. 1954), aff'd 285 App. Div. 1045, 141 N.Y.S.2d 509 (App. Div. 1955); Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338 (Ct.App. 1954); Downey v. Humphries, 102 Cal. App.2d 323, 227 P.2d 484 (D. Ct. App. 1951); Maloney v. Rhode Island Ins. Co., 115 Cal. App.2d 238, 251 P.2d 1027 (D. Ct. App. 1953); Korlann v. E-Z Pay Plan, Inc., 247 Or. 170, 428 P.2d 172 (Sup. Ct. 1967); Trimble v. Coppage, 259 Md. 176, 269 A.2d 563 (Ct. App. 1970); United Benefit Fire Ins. Co. v. Earl, 186 Neb. 175, 181 N.W.2d 841 (Sup. *418 Ct. 1970); Shoup v. Mayerson, 454 P.2d 666 (Okl. Sup. Ct. 1969).
However, the debtor-creditor argument fails because Manalapan as broker is neither debtor nor creditor to Gateway. Manalapan was agent of both the insured and the insurer, Spilka, supra, and merely a conduit for payment of premiums from insured to insurer and for payment of refunds to insured from insurer. The unearned premiums ultimately belong to former insureds of Gateway, or those who stand in their shoes, such as financing companies. The former insureds are creditors but are not debtors of the insurance company. Thus there is no mutuality of debt and credit.
Where insolvency exists, the law favors equal distribution of the effects of the debtor among all of his creditors. However, certain claims may be entitled to priority of payment over others by virtue of statutory provisions. 44 C.J.S. Insolvency § 14 at 373. Thus, without statutory preference, these creditors should stand in the same place with regard to the distribution of this estate as all others similarly situated.
Judgment for plaintiff.