943 F.2d 323
 Joseph M. HIGH
v.
Thomas M. BALUN, et al.; Alvin Miller; Karl D. Saulpaw,
Jr., Defendants-Third Party-Plaintiffs,
v.
Frank I. KOVACS, Third-party Defendant,
Alvin Miller and Pauline Miller, Appellants.
 No. 91-5071.
 United States Court of Appeals,
Third Circuit.
 Argued July 10, 1991.
Decided Sept. 4, 1991.
 
 Thomas M. Barron (argued), Lisa M. Willitts, Ferg, Barron, Muchinski & Gillespie, Moorestown, N.J. for appellants.
 James G. O'Donohue (argued), Hill Wallack, Princeton, N.J. for appellee.
 BEFORE STAPLETON, HUTCHINSON and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Joseph High sought to execute on a judgment against Alvin Miller by attaching a certificate of deposit "jointly" owned by Alvin Miller and his wife, Pauline Miller. This appeal requires us to determine each spouse's ownership interest in the certificate. In order to do that, we must predict both how the New Jersey Supreme Court would apply New Jersey choice of law rules and how it would interpret that state's Multiple Party Deposit Account Act. We conclude that the New Jersey Supreme Court would honor the provision in the certificate of deposit that the certificate's ownership is governed by the New Jersey Multiple Party Deposit Account Act and that it would hold that, under that statute, each spouse owns a separate half interest in the certificate of deposit. Accordingly, we will affirm the district court's holding that New Jersey law governs the case, but reverse its conclusion that the Millers' entire interest in the certificate of deposit was available to satisfy High's judgment.
 
 I.
 
 2
 The parties have not disputed the relevant facts. Pennsylvania residents Alvin and Pauline Miller purchased a certificate of deposit ("the CD") in the face amount of $300,000 from First Fidelity Bank, North Jersey ("the bank"). The CD was purchased by both Millers with funds from a Pennsylvania bank account that they owned as tenants by the entireties. The Millers had sought a line of credit with the bank, which required the CD as security for the loan. The bank presently has a $125,000 secured lien against the CD. One of the provisions on the face of the CD stated that "[t]his certificate is subject to the provisions of the Multiple Party Deposit Account Act N.J.S.A. 17-16I et seq.: I acknowledge receipt of the Act's provisions."
 
 
 3
 Thereafter, a $112,423.95 judgment was entered in the United States District Court for the Eastern District of Tennessee in favor of Joseph High against Alvin Miller and Thomas Balun, jointly and severally ("the judgment"). High registered the judgment with the United States District Court for the District of New Jersey ("the district court"), and then obtained an attachment of the CD. High petitioned the district court for an order compelling the bank to turn over enough of the unencumbered portion of the CD to satisfy the judgment with interest. Alvin Miller objected to the turnover, primarily on the grounds that he owned the CD as a tenant by the entireties with his wife and therefore it was not available to satisfy his individual obligations.
 
 
 4
 The case was referred to a magistrate judge for a recommendation and report. The magistrate rejected Alvin Miller's claim that Pauline Miller was a necessary party to the proceeding. He concluded that New Jersey would apply the Restatement (Second), Conflicts of Laws, § 118, the provision governing contracts, and that New Jersey law governed the Millers' ownership under that test. The magistrate then found that under New Jersey law, Mr. Miller had a separate half interest in the CD available to satisfy the judgment. Both parties filed objections to the magistrate's report. The district court entered an order affirming in part and reversing in part. It held that New Jersey law applied and that at least half of the unencumbered balance of the CD was available to satisfy the judgment, but reversed the conclusion that Pauline Miller was not a necessary party. The district court therefore remanded the case to the magistrate with instructions that High be allowed to amend the petition to include Pauline Miller and that a hearing be held to determine what portion of the remaining one-half of the CD was "attributable" to each spouse.
 
 
 5
 After conducting a hearing, the magistrate issued a second recommendation and report. Upon reconsideration, the magistrate decided that this case was a property dispute rather than a contract dispute and therefore his earlier choice of law analysis was mistaken. He then applied the Restatement (Second) provisions governing marital property in movables (§ 258) and exemptions from execution (§ 132) and concluded that Pennsylvania law governed the dispute. Under Pennsylvania law, he found that the Millers owned the CD as tenants by the entireties, but that Pauline Miller was jointly liable for the judgment as (1) a partner by estoppel, (2) a real party in interest, or (3) a privy.
 
 
 6
 Again, both parties filed objections to the magistrate's report. The district court accepted the magistrate's recommendations in part and reversed them in part. It held that its earlier affirmance of the conclusion that New Jersey law governed was binding and that the magistrate should not have revisited the issue. The court then rejected the magistrate's various theories for Pauline Miller's liability on the judgment, but found the Millers' entire interest in the CD available to satisfy the judgment based on a presumption in New Jersey law that the entire amount of a joint account belongs to the debtor. Therefore, the final judgment ordered Alvin Miller to turnover enough of the unencumbered balance of the CD to satisfy the judgment. The Millers filed a timely appeal from that judgment.
 
 
 7
 The district court had jurisdiction pursuant to 28 U.S.C. § 1963,[1] and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's interpretation of state law--the only issue in this case--is plenary. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
 
 II.
 
 8
 New Jersey law controls this case, not because New Jersey has a greater interest in the dispute than Pennsylvania, but because both states would enforce the Millers' agreement to hold the CD "subject to the provisions of the Multiple Party Deposit Account Act N.J.S.A. 17:16I et seq." The first step in any New Jersey choice of law analysis is to determine whether an actual conflict exists. Veazey v. Doremus, 103 N.J. 244, 510 A.2d 1187, 1189 (1986). Where the application of either state's law would yield the same result, no conflict exists to be resolved.
 
 
 9
 New Jersey law does not permit married couples to own personal property by the entireties. Fort Lee Sav. & Loan Assoc. v. LiButti, 106 N.J.Super. 211, 254 A.2d 804, 807 (N.J.Super.Ct.App.Div.1969) (Carton, J., dissenting), unanimously adopted as majority opinion, 55 N.J. 532, 264 A.2d 33 (1970). Pennsylvania law does permit couples to own personal property by the entireties and will assume, in the absence of contrary evidence, that joint bank accounts are so held. In re Cribbs, 411 Pa. 242, 191 A.2d 379, 382-83 (1963). But Pennsylvania does not require couples to hold property by the entireties; "intention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by entireties, such intention will be given effect." Brenner v. Sukenik, 410 Pa. 324, 189 A.2d 246, 249 (1963). In other words, a Pennsylvania couple may hold a Pennsylvania bank account in joint tenancy merely by expressing an intent to do so.
 
 
 10
 There is no dispute that the Millers jointly purchased the CD or that the CD states on its face that it is subject to the Act. Section 3 of the Act states:
 
 
 11
 The provisions of section 4 to 6 [of the Act] concerning beneficial ownership as between parties ... are relevant ... to controversies between these persons and their creditors and other successors....
 
 Section 4 provides:
 
 12
 Unless a contrary intent is manifested by the terms of the contract, or the deposit agreement, or there is other clear and convincing evidence of a different intent at the time the account is created:
 
 
 13
 (a) A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal.
 
 
 14
 N.J.S.A. 17:16I-3 and 17:16I-4.
 
 
 15
 When the Millers opened the account, they agreed to own the account "subject" to the Act, and the Act itself states that its designation of ownership is "relevant" to disputes with creditors. Therefore, when the Millers signed the CD and agreed to own it under the Act, their election governed not just their ownership of the CD vis-a-vis the bank, but also their rights against each other and third-parties.
 
 
 16
 Although the Millers consistently claim that their subjective intent was to continue to hold the funds by the entireties, that testimony is insufficient to overcome the clear provision of the CD. In determining the intent of parties to a contract, both Pennsylvania and New Jersey law will honor clear, contemporaneous, written expressions rather than testimony after the fact about the parties' subjective intent. Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 661 (1982) ("when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."); Zapanta v. Isoldi, 212 N.J.Super. 678, 515 A.2d 1298, 1303 (1986) ("Motivations or mental reservations cannot affect a written agreement."), disapproved on other grounds, Levison v. Weintraub, 215 N.J.Super. 273, 521 A.2d 909 cert. denied, 107 N.J. 650, 527 A.2d 470 (1987). We conclude that both Pennsylvania and New Jersey would enforce the CD provision, as a clear contemporary expression of the Millers' intent, rather than the Millers' alleged subjective intent. Therefore, the courts of both states would look to the Act to determine ownership of the certificate of deposit.
 
 III.
 
 17
 Finding that the Act governs the Millers' ownership of the CD does not settle the question of what is available to Alvin Miller's creditors; we must still determine what portion of the CD belongs to each spouse. Although the language of the Act, by speaking of proportion, rules out the possibility of joint ownership of the whole, it allows for any division between the parties--from complete ownership by the husband, at one end of the spectrum, to complete ownership by the wife, at the other. Because the district court's conclusion that Alvin Miller owned the entire CD was based on general New Jersey law, rather than on the Act, it bears reconsideration.
 
 
 18
 Because there was no contrary expression of intent, the Act states that the Millers' account "belongs ... to the parties in proportion to the net contributions of each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal." N.J.S.A. 17:16I-4. There appear to be no New Jersey cases interpreting "net contribution." The Act defines the phrase as "the sum of all deposits ... made by or for him, less all withdrawals made by or for him ... plus a pro rata share of any interest or dividends included in the current balance."
 
 
 19
 Thus, we must determine the net contributions of the Millers to the CD. It is undisputed that the funds to purchase the CD came from the Millers' joint account in Pennsylvania which they held in tenancy by the entireties; therefore, the Millers made equal contributions when the CD was established. By drawing upon the secured line of credit without making repayments, the Millers effectively made "withdrawals" from the CD.[2] Those "withdrawals" were equal joint "withdrawals" because both Millers signed the application for the line of credit and their testimony established that they were equal participants in the horse business for which the line of credit was used. Therefore, the Millers made equal "net contributions" to the CD because all deposits and withdrawals were joint and equal. Ownership under the Act "in proportion to the net contributions of each" results in each of the Millers having independent ownership of half the CD.
 
 
 20
 The comment to § 6-103 to the Uniform Probate Code, on which section 4 of the Act is based, reinforces this conclusion. The comment states:
 
 
 21
 This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership.
 
 
 22
 The comment indicates that the language was intended to allow one party to deposit funds in a joint account without creating a presumption that the deposit, without more, made a gift to the other party. Thus, if the wife owned funds before depositing them in a couple's joint account, the deposit will not be interpreted as a gift of a half-interest to her husband. The provision was intended to prevent the mere establishment or use of a joint account from automatically changing the parties' ownership interests in the deposited funds. It is consistent with that intent to find that the Millers' equal interests in the funds that purchased the CD continued so that they had equal interests in the CD.
 
 IV.
 
 23
 For these reasons, we will affirm the district court's holding that New Jersey law applies, but will reverse its conclusion that under New Jersey law the entire unencumbered portion of the CD is available to satisfy a judgment against Alvin Miller. We will remand for entry of an order consistent with this opinion.
 
 
 
 [1]
 Section 1963 provides in relevant part,
 A judgment in an action ... in any district court ... may be registered by filing a certified copy of such judgment in another district.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
 
 
 [2]
 Because the line of credit was technically a separate obligation, it might be said that withdrawals were made by the bank for the Millers to repay that obligation. The result under the statute was the same