**POLAR INTERNATIONAL BROKER-AGE CORP. and Monarch Properties, Inc., Appellant/Plaintiff,**

v.

**INVESTORS INSURANCE COMPANY OF AMERICA, Respondent/Defendant/Third Party Plaintiff,**

v.

**TRANS ELITE INTERNATIONAL, INC., Mid–Atlantic Facilities, Inc. and Jerry Silver, Third Party Defendants.**

Civil No. 94–2329 (HAA).

United States District Court, D. New Jersey.

May 29, 1997.

Norris D. Wolf, Kleinberg, Kaplan, Wolff & Cohen, Teaneck, NJ, for Appellant/Plaintiff.

Robert J. Marmorstein, Greenberg & Marmorstein, Hackensack, NJ, for Respondent/Defendant, Investors Insurance Company.

## OPINION

ACKERMAN, District Judge.

This matter comes before the court pursuant to 28 U.S.C. § 636(c)(4) on plaintiff's appeal of Magistrate Judge Stanley R. Chesler's decision to grant defendant's motion for summary judgment. For the reasons detailed below, this court affirms the Magistrate's grant of defendant's summary judgment motion.

### I. Background

Judge Chesler's opinion sets forth in detail the factual background of this case and it will not be repeated here. For the purposes of this appeal, it is sufficient to know that this action arose from a dispute regarding an insurance policy. Specifically, the plaintiffs allege that through Trans Elite, they rejected Policy GLP–002818 ("the new policy") which had been issued by the defendant, Investors Insurance Company of America ("Investors"). Investors issued this policy to Monarch Properties ("Monarch") in March 1993 after having canceled another policy, GLP–002321 ("the old policy"), in January due to Monarch's failure to pay its premiums. Monarch is a Texas real estate company with real estate in New York, Texas, Oklahoma, New Mexico and other locations. Monarch had secured the new policy through Trans Elite by using two intermediaries, Polar International Brokerage Corp. ("Polar"), the other plaintiff, and Mid–Atlantic Facilities, Inc. ("Mid–Atlantic"), one of the Third Party Defendants. Plaintiff claims that it was dissatisfied with the new policy because it contained a 100% Minimum Retained Premium ("MRP") clause—an MRP percentage much higher than the old policy's 25% MRP. In an insurance policy, an MRP clause states the percentage of the premium that the insurer is entitled to retain in the event that the policy is cancelled. For example, the MRP clause of the original policy stated that:

> In the event of cancellation by the Insured, the minimum premium retained by the Company for the policy is $75,000. or 25 % of the total advanced premium, and that such minimum retained premium is not subject to short-rate or pro-rata adjustment.

Magistrate Opinion at 3.

As I have already indicated, the new policy contained a 100% MRP clause. Additionally, the new policy did not cover the period of time between the cancellation of the prior policy and the issuance of the new policy.[1]

---

1. In his opinion, Judge Chesler made the following observation: "While for purposes of this motion, the Court accepts as true Plaintiffs' contention that Trans Elite . . . complained about the

In May, 1993, Michael Bruzzi, Trans Elite's office manager, received the new policy back from Mid–Atlantic "indicating that the policy was unacceptable because of the 100% MRP clause." *See* Magistrate Opinion at 7. Trans Elite then wrote to Investors requesting changes, but it did not expressly reject the policy as is. *See Id.* at 8. In July, 1993, Monarch obtained insurance from somewhere else and through Trans Elite, asked that Investors delete 2,475 units from its policy. When Investors refused to return any premium on the grounds that the policy contained a 100% MRP clause, Monarch initiated suit. In April 1996 Investors moved for summary judgment against the plaintiffs.

In his opinion, Judge Chesler found that Monarch had failed to reject the policy *in toto*. In April, 1993, Polar did express its desire to reject the policy *in toto* when it returned the policy to Mid–Atlantic, who then forwarded it to Trans Elite, but, according to Judge Chesler, Polar did not "effectively" reject the policy. *See Id.* at 16. The court concluded that for purposes of negotiating the policy, Trans Elite served as Monarch's agent and not that of Investors. *See Id.* Therefore, Monarch's communication to Trans Elite, its agent, did not effectively reject the policy. It would only have been effective had Trans Elite conveyed Monarch's wish to reject the policy directly to Investors. *See Id.* at 16. Trans Elite did not do that and therefore, the court granted summary judgment in favor of the defendant. Alternatively, Judge Chesler concluded that even if Monarch had effectively rejected the policy, "both Monarch's and Trans Elite's subsequent actions ... served to accept and ratify" the policy with the 100% MRP clause. *Id.*

Plaintiffs bring this appeal on the ground that Trans Elite was, in fact, Investor's agent and therefore, plaintiffs contend that they effectively rejected the policy with the 100% MRP clause—the new policy. Additionally, the plaintiffs contend that Judge Chesler erred in his finding that the plaintiffs ratified the new policy.

## II. Standard of Review

▮ In reviewing a decision of a Magistrate Judge, a district court should utilize the same standard of review utilized by the court of appeals in reviewing a decision of the district court. *See* 28 U.S.C. § 636(c)(4). Therefore, this court will view all facts in the light most favorable to the plaintiff and it will exercise plenary review of the legal issues underlying the Magistrates's order granting summary judgment. *Carnegie Mellon Univsersity v. Schwartz*, 105 F.3d 863, 865 (3rd Cir.1997).

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dism'd*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988).

The substantive law will identify which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.*

The party seeking summary judgment always bears the initial burden of production, i.e., of making a *prima facie* showing that it

[new policy's] MRP clause, it appears that Plaintiff's real bone of contention was that their [old] policy was not reinstated from its point of can-

cellation, leaving the company exposed with their properties uninsured for the gap between January 26, 1996, and March 4, 1996."

is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This may be done either by demonstrating there is no genuine issue of fact and that as a matter of law, the moving party must prevail or by demonstrating the nonmoving party has not produced evidence relating to an essential element of the issue for which it bears the burden. *Id.* at 322–23, 106 S.Ct. at 2552–53. Once either showing is made, the burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. *Id.* at 324, 106 S.Ct. at 2553.

However, at the summary judgment stage, a court may not weigh the evidence or make credibility determinations—these tasks are left to the factfinder. *Petruzzi's IGA v. Darling–Delaware,* 998 F.2d 1224, 1230 (3d Cir.), *cert. denied,* 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). Therefore, to raise a genuine issue of material fact, " 'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Id. See also Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]. ").

If the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, then summary judgment may be granted.

*III. Discussion*

*A. Agency*

*i. Actual*

 In his opinion, Judge Chesler correctly noted that an insured is not bound to accept a policy, but if the insured wishes to reject it, it must do so *in toto. See* Magistrate Opinion at 11. Because the new policy contained a 100% MRP clause, the Magistrate properly noted that Monarch would only be entitled to a refund of the premium paid if it had "clearly rejected [it] *in toto.*"

*Id.* Therefore, Polar's entire fate in the instant appeal turns on whether Trans Elite was Investor's agent at the time that Monarch expressed its desire to reject the policy. Judge Chesler relied upon New Jersey law.

New Jersey law distinguishes between insurance agents and insurance brokers. An insurance broker is a "person who, for a commission, brokerage fee, or other consideration, acts or aids in any manner concerning negotiation, solicitation or effectuation of insurance contracts as the representative of the insured ... " N.J.S.A. 17:22A–2g. An insurance agent is a "person authorized, in writing, by any insurance company to act as its agent to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance policies on its behalf." N.J.S.A. 17:22A–2f.

 While the general rule is that an agent acts for the insurer and a broker acts for the insured, there exists a hybrid situation—a broker/agent which becomes especially relevant here. In this hybrid context, a broker acts for the insured for the purpose of evaluating the needs of the insured, making recommendations, and attempting to obtain coverage, but when a broker or agent "acts for the [insurer] within the scope of the authority outlined by the terms of the agreement, he is acting as the [insurer's] authorized agent and his acts are to be considered as the [insurer's]." *Mazur v. Selected Risks Insurance Co.,* 233 N.J.Super. 219, 226, 558 A.2d 508 (App.Div.1989); *see also Countryside Oil Company v. Travelers Insurance Co.,* 928 F.Supp. 474, 483 (D.N.J.1995). In its relations with the insurer, such an entity's role as the insurer's agent is limited to the terms of the agreement.

 In the instant matter, Judge Chesler noted that "it is clear that the contractual relationship between Trans Elite and Investors did not establish a general agency between the two," but rather, "established a brokerage agreement" which explicitly stated that "The Broker is granted no authority to bind the company to any risks nor to cancel the policy issued by the Company without prior approval from the Company." Magis-

trate Opinion at 14; *See* Respondent's Br., Ex. A (copy of Brokerage Agreement). However, the Brokerage Agreement's preamble did authorize Trans Elite to "place" insurance contracts and to "utilize generally" Investors' "underwriting facilities, knowledge and services." Defendant's Appellate Br., Ex. A. Because the Brokerage Agreement explicitly denied Trans Elite the power to cancel a policy and did not explicitly authorize Trans Elite to negotiate Monarch's insurance needs and acknowledge Monarch's rejection of the policy, this court can only conclude that Trans Elite served as Monarch's agent for those purposes. Therefore, Judge Chesler properly found that when Monarch returned the policy to Trans elite, "Trans elite was assisting Monarch in securing appropriate insurance and was thus, Monarch's agent." Magistrate Opinion at 16.

In its brief before this court, the appellant has argued that Judge Chesler erred because there existed a genuine issue of material fact as to Trans Elite's agency status. *See* Appellant's Br. at 10–15. Furthermore, the plaintiffs assert that Trans Elite served as Investors' agent because the Brokerage Agreement authorizes it to place contracts and solicit funds. *See Id.* at 11. However, plaintiff's position represents a complete misunderstanding of the law.

■ First, plaintiff relies upon *Sheeran v. Sitren,* 168 N.J.Super. 402, 409, 403 A.2d 53 (Super.Ct.Law Div.1979) and *Kubeck v. Concord Insurance Co.,* 103 N.J.Super. 525, 248 A.2d 131, (Super.Ct.Ch.Div.1968), *affirmed,* 107 N.J.Super. 510, 259 A.2d 473 (App.Div. 1969) to argue that broker's duty to remit earned premiums establishes an agency relationship which extends to broker's activities implicated in this case. While this duty does create an agency relationship, the plaintiff ignores the hybrid nature of the broker's role. As the *Sheeran* court noted later on in its opinion, "a broker may be an agent of the insurer for the receipt of premiums even though he is the agent of the insured in procuring insurance. . . . New Jersey follows the general rule that the broker owes a duty to both the insured and the insurer; the broker, on placing the policy with the insurer as agent for the insured, then becomes the

agent of the insurer to deliver the policy to the insured and to collect and remit premiums." *Id.* Therefore, the fact that a broker is the insurer's agent for the purpose of remitting earned premiums does nothing to support appellant's case.

■ Furthermore, appellants cite COUCH ON INSURANCE 2d for the proposition that a broker may expand his agency relationship with the insurer to other areas beyond the collection of premiums and the placement of policies. *See* Appellants Br. at 11. Appellants argue that because whether the broker has enlarged his relationship is a factual matter "to be determined by the evidence in each particular case," Judge Chesler improperly concluded that, as matter of law, Trans Elite was not Investors' agent. Appellant Br. at 11 (citing COUCH ON INSURANCE 2d, § 25:96). While this may be true, the statement taken from the treatise should be placed in context. The treatise prefaces its explanation with the following: "absent some special condition or circumstance in the particular case, a broker is not the agent of the insurer and may not be converted into an agent for the insurer without some action on the part of the insurer, or existence of some facts by which his or her authority to represent it may be fairly inferred. . . ." COUCH ON INSURANCE 3d, § 45.5. In the instant matter, the plaintiffs have not identified any "special circumstances" and therefore, I find that there are no genuine issues of material fact regarding Trans Elite's agency status.

*ii. Apparent Agency*

On appeal, the appellants also argue that even if actual agency did not exist, apparent authority did exist and therefore, this court should treat Trans Elite as an agent of Investors. Notably, when they appeared before Judge Chesler, appellants did not make this argument and therefore cannot be raised for the first time on appeal. Nevertheless, I note that courts have found apparent agency to exist only where the insurer knowingly and voluntarily places its agent in a situation that a prudent person, conversant with business usages would be justified in assuming that the agent had authority to act. *See National Premium Budget Plan Corpora-*

*tion v. National Fire Insurance Co.,* 106 N.J.Super. 238, 242, 254 A.2d 819 (App.Div. 1969). In addition, the appellant must demonstrate reliance on that apparent agency. *See Id.*

In the instant appeal, the appellants merely allege that Investor's use of Trans Elite to solicit and negotiate policies established an agency relationship. They further allege that Investors' silence regarding its knowledge of Trans Elite's discussions Monarch bolsters a finding of apparent agency. Based upon this unsupported statement, this court cannot conclude that a reasonably prudent person would be justified in assuming that an apparent agency exists. Moreover, New Jersey law anticipates that brokers will negotiate and solicit policies. *See* N.J.S.A. 17:22A–2g. Therefore, appellants' agency claims should be rejected.

*iii. Choice of Law*

Without conducting any choice of law analysis, Judge Chesler's treatment of the agency issue assumes that New Jersey law applies to this case and neither party challenges that proposition. While such an analysis would not change Judge Chesler's ultimate conclusion, some discussion is warranted.

 A federal court applying state law must apply the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Electric,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See also Dent v. Cunningham,* 786 F.2d 173, 176 (3d Cir.1986). Therefore, New Jersey choice of law rules govern in the instant case. New Jersey law commands that the law of the place of contracting should ordinarily be applied unless some other state has the " 'dominant relationship' with the parties and issues." *NL Industries, Inc. v. Commercial Union Insurance Company,* 65 F.3d 314, 319 (3d Cir. 1995). In the insurance context, the place of contracting is the place where the parties executed and delivered the insurance policy. *See Id.* at 320 n. 4. "If a company from another state uses an insurance broker to negotiate and purchase its insurance policies, then the place of contracting is the place where the broker negotiated the policies." *Id.* Here, although Investors is a New Jersey

company, Trans Elite served as Investors' insurance broker authorized to place insurance in New York. Because Trans Elite negotiated the policies in New York, it appears that New York law should be applied unless some other state has a dominant relationship with the parties and issues.

 If this court were examining the issue for the first time, it might have applied New York law, but I do not need to address the choice of law issues in a case where there is no true conflict between the insurance laws of each state. *See Williams v. Stone,* 109 F.3d 890, 893 (3rd Cir.1997). In other words, if the laws of the states which might be applied to a relevant issue are not in conflict, there exists a false conflict and the court need not determine which law to apply. *See High v. Balun,* 943 F.2d 323, 325 (3rd Cir. 1991); *Coons v. Lawlor,* 804 F.2d 28, 30 (3rd Cir.1986). Therefore, I must first examine New York law to determine if it conflicts with New Jersey law.

 As with New Jersey law, it is a well settled principle of New York law that even though an insurance broker may act as the agent of the insurer for some purposes, brokers are generally deemed to be agents of the insured. *Bohlinger v. Zanger,* 306 N.Y. 228, 231–32, 117 N.E.2d 338 (1954). For example, a broker continues to be the insured's agent even where the insurer has authorized him to collect premiums on behalf of the insurer. *See Id.* Where an insurer authorizes a broker to act as his agent for a specific purpose, e.g. the payment of premiums, it does not authorize brokers to do other things like reinstate canceled policies. *See Augustin v. Gilot,* 152 Misc.2d 666, 578 N.Y.S.2d 348, 352 (Civ.Ct.1991), *reversed on other grounds,* 158 Misc.2d 627, 606 N.Y.S.2d 514 (1993) (appellate court reversed the lower court on its application of the law, but reaffirmed the broker's limited agency relationship with the insurer). A broker acts as the insurer's agent only where "there is some evidence of action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred." *Incorporated Village of Pleasantville v. Calvert Insurance Co.,* 204 A.D.2d 689, 612 N.Y.S.2d 441, 442 (1994). Thus, New York law, like

that of New Jersey, acknowledges that the insurance broker may occupy a hybrid position, but absent special circumstances, the broker serves as the insured's agent for the purpose of rejecting a policy or securing appropriate insurance. Because the instant case does not implicate any actual conflict between New Jersey and New York law, it is unnecessary to conduct a choice of law analysis and therefore, I find that Judge Chelser did not err by applying New Jersey law.

## B. Ratification

Finally, appellants argue that Judge Chesler erred by finding that even if Monarch did reject the policy, Monarch ratified the insurance policy because it was "not disputed" that it filed claims for losses in July, 1993 and requested that units be deleted by Investors from the then effective insurance policy. *See* Magistrate Opinion at 12,15. Appellants do not take issue with the finding that an insurance policy may be ratified by the acts of the insured. However, according to appellants, any claims that were filed or any requests for changes in coverage were filed under the old policy which had been canceled, GLP–002321. *See* Appellant's Br. at 18–19.

In light of the foregoing conclusion that Monarch never rejected the new policy, GLP–002818, I need not consider this argument. Nevertheless, I find appellant's argument somewhat incredulous because they were well aware that GLP–002321 had been canceled and that GLP–002818 was then in effect. Moreover, it appears that plaintiff's made their request to delete certain units under the new policy and not the old. *See* Richman Aff., Ex. B. Thus, even if I were to consider this argument, I would not be inclined to find appellant's argument—that a genuine issue of material fact existed solely because Monarch alleges to have filed its claims under the old policy—sufficient to survive summary judgment.

## IV. Conclusion

For the reasons detailed above, I find that the Judge Chesler's decision to grant sum-

mary judgment in favor of the defendant should be AFFIRMED.